UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
::
TRUSTEES OF THE LOCAL 531 : 08-CV-1272 (ARR) (JMA)
PENSION FUND, :
:  NOT FOR PRINT OR
Plaintiffs, : ELECTRONIC
: PUBLICATION
-against- :
: AMENDED OPINION &
AL TURI LANDFILL, INC., : ORDER
:
Defendant. :
X
-------------------------------------------------------------------

ROSS, United States District Judge:

In the instant action, plaintiffs, Trustees of the Local 531 Pension Fund, allege that defendant Al Turi Landfill is liable to them for unpaid withdrawal liability pursuant to the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. § 1301, et. seq., and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461. Defendant moves for an order dismissing the complaint and directing the parties to proceed to arbitration. Plaintiffs move for summary judgment. For the reasons set forth below defendant's motion to compel is granted, plaintiffs' motion for summary judgment is denied without prejudice, and the action is stayed pending the outcome of the arbitration.

## BACKGROUND

The Local 531 Pension Fund ("Fund") is an "employee benefit fund" as defined in Sections 3(2) and 3(3) of ERISA. See 29 U.S.C. §§ 1002(2); 1002(3). The Fund is operated pursuant to its Trust Agreement and has further adopted Plan Rules and Regulations concerning the administration of the Local 531 Pension Plan, including the enforcement of withdrawal

1

liability obligations. (Aff. of Barry Reich, Dec. 16, 2009 ("Reich Aff."), ¶5, Ex. C.) Defendant Al Turi Landfill, Inc. was party to a series of collective bargaining agreements with Local 531. (Compl. ¶ 7.) Pursuant to the collective bargaining agreements, Al Turi was obligated to make monthly contributions to the Fund on behalf of its employees working in covered employment. (Compl. ¶ 7.) In December 1997, the collective bargaining agreement between Al Turi and Local 531 was amended, and Al Turi and the other signatory employers then contributing to the Fund were no longer obligated to make monthly contributions. (Reich Aff. ¶ 9.) While there is some dispute as to the reasons for the Fund's termination, it is agreed that the Local 531Pension Fund was terminated, and at that time, Al Turi permanently ceased to have an obligation to make monthly contributions to the Fund, and all employer members, including Al Turi, were assessed a withdrawal liability. (Reich Aff., ¶ 11.)

On March 27, 1998, Local 531 notified Al Turi that it had "computed the unfunded vested benefits (UVB) allocated to the Company to be equal to: $236,970.64. This is the Company's withdrawal liability." (Reich Aff. ¶ 11, Ex. D.) On December 2, 1998, defendant filed a Demand for Arbitration with the American Arbitration Association ("AAA") seeking "complete or partial reduction" of its withdrawal liability. (Decl. of Edward Beane ("Beane Decl."), ¶ 17, Ex. C.) On December 21, 1998, defendant sent a letter to the AAA stating that it consented to Local 531's request to hold the arbitration in abeyance for an unspecified period of time. (Beane Decl., ¶ 22, Ex. E.) On January 27, 1999, Local 531 informed Al Turi of its "Reallocation Liability" and stated that Al Turi's total liability, including withdrawal liability, redetermination liability, and reallocation liability, was $441,537.11. (Reich Aff. ¶ 12, Ex. E.) The payment schedule provided for 147 quarterly payments of $6,738.40 each, and a final payment in the amount of $1,326.30, with payments due on February 1, May 1, August 1, and

November 1 of each year. (Reich Aff. ¶ 12, Ex. E.) Defendant states that in or around 1999, Al Turi began making these quarterly payments to Local 531 in a timely fashion at the rate of $6,738.40 per quarter, while reserving its right to challenge these assessments in the pending arbitration. (Beane Decl., ¶ 20.)

On September 15, 1999, after a period of inactivity, AAA advised both parties that "[u]nless we are advised to the contrary, by either party, within ten days, our records will be marked to reflect that the matter has been settled and that it is the parties' wish that it be withdrawn from arbitration." (Beane Decl., ¶ 23, Ex. F.) On October 19, 1999, defendant wrote to AAA stating that defendant "has not abandoned this case and would like to move forward with the scheduling matter for arbitration." (Beane Decl., ¶ 24, Ex. G.) Despite the fact that defendant sent its letter after the ten day deadline set by AAA, on November 3, 1999, AAA informed the parties that it had appointed an arbitrator. (Beane Decl., ¶ 25, Ex. H.) Defendant subsequently sent plaintiffs a document request, and on February 4, 2000, AAA notified the parties that an arbitration hearing had been scheduled for April 4, 2000. (Beane Decl. ¶¶ 27, 29, Exs. I, K.) The hearing was adjourned twice, and before the November 6, 2000 hearing, another adjournment was sought. (Beane Decl. ¶¶ 30-31, Exs. L, M.) On February 12, 2001, AAA advised the parties that it had not received any information regarding the status of the arbitration and intended to close the matter within two weeks. (Beane Decl. ¶ 32, Ex. N.)

By letter dated March 26, 2001, more than two weeks later, defendant advised AAA that due to the health concerns of Al Turi's principal, the matter had been put aside indefinitely, and that the parties had not had the opportunity to settle the matter. (Beane Decl. ¶ 33, Ex. O.) Defendant requested that the mater be restored and reopened so that the parties could move forward. (Beane Decl. ¶ 33, Ex. O.) Over the next year, the arbitration hearing was adjourned

four times, and was scheduled for March 12 and 13, 2002. (Beane Decl. ¶¶ 35-37, Exs. P, R.) In January 2002, defendant notified plaintiffs of its "precarious financial position," and that its landfill space was virtually filled to capacity. The defendants stated that without a permit for its expansion, the landfill would no longer be economically viable. (Beane Decl. ¶ 39, Ex. S.) Al Turi sought approval from the New York State Department of Environmental Conservation ("NYSDEC") to expand its landfill, and was denied. This denial was affirmed by the New York Court of Appeals in October 2002. See Al Turi Landfill, Inc., v. New York State Dept. of Environmental Conservation, 98 N.Y.2d 758 (2002).

The date of the arbitration hearing was further postponed on numerous occasions as the parties attempted to reach a settlement. (Beane Decl. ¶¶ 41-46, Exs. T, V-X.) On April 21, 2003, the parties sought to adjourn a May 14, 2003 hearing for settlement purposes. (Beane Decl., Ex. X.) On April 23, 2003, AAA stated that it would place the file in abeyance, and noted that "the Association generally cannot hold cases in abeyance pending settlement longer than twelve (12) months. Accordingly, we will hold the above-captioned matter in abeyance pending further advice from the Parties or until April 2004." (Beane Decl., Ex. Y.)

Defendant states that after May 2003, the parties continued to communicate regarding settlement and Al Turi's financial position. (Beane Decl. ¶ 49.) However, neither party specifically requested that AAA reopen the arbitration proceedings prior to April 2004. Defendant states that in July 2006, defendant again informed plaintiffs of its financial situation, and asserted that that it qualified for "hardship" consideration under the appropriate ERISA rules. (Beane Decl. ¶54, Ex. DD.)

Plaintiffs claim that Al Turi failed to make each of the required quarterly payments that were due beginning on May 1, 2006. (Compl. ¶ 17.) Defendant asserts that it tendered quarterly

4

payments to the Fund for the quarters ending August 1, 2006 and November 1, 2006. (Decl. of Edward Phillips, Mar. 12, 2010, Ex. A.)[1] Regardless of when the last payment was made, in September 2007, the Fund, by counsel, demanded payment of the unpaid quarterly payments. (Compl. ¶ 19; Reich Aff. ¶ 15, Ex. F.) Al Turi failed to make any payments after the Fund's September 2007 demand. (Compl. ¶ 17.) Defendant asserts that it is no longer operating and is insolvent. (Def.'s Letter, Aug. 21, 2009, Dkt. No. 18.)

Under the Plan Rules and Regulations, where an employer fails to pay its withdrawal liability quarterly payment when due, and such failure is not cured within sixty days after written notice of such failure, the employer is deemed to be in default of its withdrawal liability obligation. (Reich Aff., Ex. C, Art. 14, § 14.11(c).) The Plan Rules also provide that when an employer has defaulted, it is liable for interest on the total unpaid withdrawal liability from the due date of the first payment which was not timely made, and that the Plan shall be entitled to reasonable attorneys' fees, litigation costs, and liquidated damages. (Reich Aff., Ex. C, Art. 14, §§ 14.11(c), 14.11(e).)

Plaintiffs filed the instant action on March 28, 2008. Defendant now moves for an order dismissing the complaint and directing the parties to proceed to arbitration. Plaintiffs move for summary judgment, claiming that there is no issue of material fact as to defendant's liability. Plaintiffs seek Al Turi's outstanding withdrawal liability, along with interest, liquidated damages, and attorneys' fees.

## DISCUSSION

I. <u>Defendant's Motion to Compel Arbitration</u>

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§

---

[1] Defendant also states that it made payments until the fourth quarter of 2007, (Reply Decl. of Edward Beane in Support of Def.'s Mot. to Compel Arbitration, ¶¶ 6, 13), but has failed to provide support for this in the record.

1381-1461, requires employers who withdraw from multiemployer pension plans to pay "withdrawal liability." The MPPAA provides that, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [29 U.S.C. §§ 1381-1399]," which includes the determination of withdrawal liability, "shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). The MPPAA also provides that either party may initiate arbitration proceedings "within a 60-day period after the earlier of-- (A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title." 29 U.S.C. § 1401(a)(1). When parties have not acted within the statutory timeframe, courts have found that the parties have waived their right to arbitration. See, e.g., Jaspan v. Certified Industries, Inc., 645 F. Supp. 998, 1006 (E.D.N.Y. 1985) (". . . Certified waived its right to arbitration by not acting within the statutory time frame, making the trustees' determination binding."); Vacca v. Bridge Chrysler Jeep Dodge, Inc., 2008 WL 4426875, at * 6 (E.D.N.Y. 2008) (". . . if an employer fails to initiate the arbitration process to contest the amount of withdrawal liability assessed against it, the employer has waived its right to arbitration, and a federal court will not make an independent determination that the plan sponsor's assessment was unreasonable.").

Here, the plaintiff does not argue that Al Turi failed to timely demand arbitration. (Pls.' Br. in Response to Def.'s Mot. to Compel, at 13.) Thus, the issue is whether defendant subsequently waived or abandoned its right to arbitration.

In the contractual arbitration clause context, courts have found that "[f]ederal policy strongly favors arbitration as an alternative means of dispute resolution." PPG Industries, Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997) (citing Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 130 (2d Cir. 1997); Leadertex Inc. v. Morganton Dyeing & Finishing

Corp., 67 F.3d 20, 25 (2d Cir. 1995)). This preference for arbitration "[has] led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration." Id. (citations omitted).

When determining whether a party has waived its right to arbitration, the Second Circuit has considered: "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice," id., however, "[t]he key to a waiver analysis is prejudice." National Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp., 2010 WL 1816271, at *1 (2d Cir. 2010) (citing Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 105 (2d Cir.2002) (per curiam)). The Circuit has also stated that "[t]here is no bright-line rule, however, for determining when a party has waived its right to arbitration: the determination of waiver depends on the particular facts of each case." PPG Industries, Inc., 128 F.3d at 107-08 (citations omitted).

A. *The Time Elapsed from the Commencement of Litigation*

First, the current lawsuit was commenced on March 28, 2008. In their complaint, plaintiffs asserted that "[n]either the defendant nor the Fund has initiated arbitration proceedings under Section 4221(a) of ERISA . . . with regard to the Fund's determination of the amount of withdrawal liability owed by the Defendant." (Compl. ¶ 16.) Defendant in its answer denied that allegation, "and assert[ed] affirmatively that Defendant did demand arbitration . . . and that said arbitration is still pending." (Answer, ¶ 16.) While defendant did not technically raise the arbitration as an affirmative defense, it did alert plaintiffs to its position that arbitration was still pending. See, e.g., PPG Industries, Inc., 128 F.3d at 109 ("PPG failed to assert the defense of arbitration in its answer . . . which would have resulted in a clear indication of PPG's intention to

7

invoke its arbitration rights.") (citations omitted); but see Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991) ("Kramer's answer raised six affirmative defenses and four counterclaims; but he did not raise the arbitration clause.")  On the other hand, defendant only indicated its intent to *move* to compel arbitration on July 21, 2009. (Def.'s Letter, Dkt. No. 18.)  While the Second Circuit has found that a delay of five months is insufficient by itself to infer waiver of arbitration, PPG Industries, Inc., 128 F.3d at 108, the near fifteen month time period from the filing of the complaint to defendant's indication of its intent to make a motion is more significant. See also Leadertex, 67 F.3d at 25 (noting a seven month delay).  Thus, this factor favors a finding of waiver.

B.  *The Amount of Litigation and Discovery*

Second, the parties have engaged in discovery and settlement conferences before Magistrate Judge Azrack.  However, the amount of discovery has not been extensive -- no depositions have occurred, and no substantive motions were filed until the present ones.  Thus, this factor does not favor a finding of waiver. See, e.g., PPG Industries, Inc., 128 F.3d at 108, finding that ("by engaging in discovery and filing substantive motions . . . PPG evidenced a preference for litigation that supports a finding of waiver").

C.  *Proof of Prejudice*

The record, however, does not sufficiently show the requisite prejudice to overcome the federal preference for arbitrating disputes.  The Second Circuit has stated that "[p]rejudice as defined by our cases refers to the inherent unfairness - in terms of delay, expense, or damage to a party's legal position - that occurs when the party's opponent forces it to litigate an issue and

later seeks to arbitrate that same issue." Id. (quoting In re Crysen/Montenay Energy Co., 226 F.3d 160, 162-63 (2d Cir.2000)). The Circuit has also found prejudice where a party engages in discovery procedures not available in arbitration. See id. at 107, see also Cotton v. Slone, 4 F.3d 176, 179-80 (2d Cir.1993) (waiver suggested by party's having engaged in discovery procedures not available in arbitration). However, "[i]ncurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." PPG Indus., Inc., 128 F.3d at 107 (citing Doctor's Assocs., 107 F.3d at 134). Here, plaintiffs have not been forced to engage in substantive motions, nor have they shown that defendant has sought discovery unavailable in arbitration that it seeks to use in that forum.

Plaintiffs argue that as recently as 2007, Al Turi was selling property "which could have been used to satisfy its withdrawal liability obligation," and thus any delay in the proceedings will result in prejudice. (Pls.' Br. in Response to Def.'s Mot. to Compel, at 11.) Defendant concedes that sales took place, but states that the "sale of these properties was not wrongful and will have no adverse effect upon the Fund's ability to satisfy any judgment obtained against the Company." (Def.'s Reply Decl. in Support, ¶ 10.) First, these land sales took place prior to the present litigation commencing, and thus it is not clear that such acts can be used in the prejudice analysis, since courts examining prejudice have focused solely on the conduct of the party seeking arbitration *during* the course of litigation. See, e.g., Cotton v. Slone, 4 F.3d 176, 179-80 (2d Cir. 1993) (finding prejudice where the party seeking to enforce an arbitration clause already had availed itself of pre-trial discovery, brought substantive motions, and invoked the powers and procedures of the district court). Second, while Al Turi concedes it is in a precarious financial situation, the assertion that the "funds received from these sales would have satisfied Al Turi's withdrawal liability obligation long ago" is speculative. I cannot find on this record that

9

the land sales, by themselves, show with certainty sufficient prejudice in the form of loss or expense to overcome "[f]ederal policy [that] strongly favors arbitration as an alternative means of dispute resolution." PPG Industries, Inc., 128 F.3d at 107 (citations omitted). Additionally, the interest accruing on the unpaid withdrawal liability is not unlike costs inherent in litigation, which the Second Circuit has found "insufficient evidence of prejudice to justify a finding of waiver." PPG Indus., Inc., 128 F.3d at 107 (citing Doctor's Assocs., 107 F.3d at 134). Accordingly, I cannot find on this record that plaintiffs would be prejudiced by a return to arbitration.

D. *Whether the Present Issues are Arbitrable*

Plaintiff also argues that the issue of whether the Fund is entitled to judgment against Al for its withdrawal liability is not arbitrable.

First, defendant's insolvency claim under § 1405(b) is *required* to be raised in arbitration, and courts have found the issue of insolvency relating to withdrawal liability waived when an employer failed to pursue arbitration as required by 29 U.S.C. § 1401(a)(1). See Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. BES Services, Inc., 469 F.3d 369, 376 (4th Cir. 2006); see also Central States Southeast and Southwest Areas Pension Fund v. American Industrial Assurance Co., 2005 WL 483427, at *3 (N.D.Ill. 2005) (finding that Section 1405 defenses must be arbitrated or are waived); Langone v. Yankee Food Distrib., Inc., 1995 WL 791942, *1-2 (D. Mass. 1995) (Section 1405 defense must be arbitrated); Local 478 Trucking and Allied Indus. Pension Fund v. Jayne, 778 F.Supp. 1289, 1313 (D. N.J. 1991) (right to contest withdrawal liability waived when arbitration not initiated); Tr. of the Amalgamated Ins. Fund v. Vi-Mil, Inc., 1987 WL 14665, *3-4 (S.D.N.Y. 1987) (Section 1405 defense must be arbitrated).

To the extent plaintiffs argue that defendant did not assert its insolvency at the time withdrawal liability was assessed and does not meet the statutory definition of insolvency, such issues are factual ones for the arbitrator. T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n, 756 F.2d 939, 945 (2d Cir. 1985) ("The Act subjects to arbitration factual issues the resolution of which is necessary to calculate withdrawal liability.").

Second, as to the issue of default, plaintiff argues that because Al Turi ceased making withdrawal liability payments some time in 2006, there is no question that under ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5), the Fund was entitled to require immediate payment of the entire withdrawal liability amount demanded plus interest. 29 U.S.C. § 1399(c)(5); 29 C.F.R. § 2644.2 (providing that if an employer fails to make an installment of withdrawal liability after receiving a 60 day delinquency notice, the plan may declare the employer in default, accelerate the remaining payments, and assess interest on the entire accelerated amount from the due date of the first payment not timely made). Where employers have failed to preserve their arbitration rights and subsequently ceased making payments, courts have held that 29 U.S.C. § 1399(c)(5) entitles the fund to require immediate payment of the entire withdrawal liability plus interest. See Bowers v. Transportaction Maritima Mexicana, S.A., 901 F.2d 258, 265 (2d Cir. 1990); see also New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co., 848 F.2d 20, 23 (2d Cir. 1988).

However, while there is no dispute that Al Turi ceased making payments, there is a dispute over what constitutes the "entire withdrawal liability." As stated above, the MPPAA provides that, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [29 U.S.C. §§ 1381-1399] . . . shall be resolved through

arbitration." 29 U.S.C. § 1401(a)(1). Because the default provisions fall under 29 U.S.C. § 1399(c)(5), and disputes under that section "shall be resolved through arbitration," I cannot find that the alleged default precludes a return to arbitration. Additionally, courts have held that an employer's invocation of its right to arbitration over its withdrawal obligation prevents a Fund from accelerating the employer's liability for an alleged default. Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc., 125 F.3d 526, 532-33 (7th Cir. 1997) (finding that "the fund may exercise its right to an accelerated payment, but acceleration may be delayed if the employer invokes its own right to arbitration"); see also ILGWU Nat. Retirement Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 881-82 (2d Cir. 1988) (". . . the Pension Benefit Guaranty Corporation . . . has softened the impact of this 'pay-first-question-later system' through regulations which provide that the plan sponsor cannot consider the employer to be in default and accelerate its demand for payment until the 61st day after the review and arbitration process is complete.") (citations omitted).[2]

Third, plaintiff argues that a stay of these proceedings and a return to arbitration would not be proper because under 29 U.S.C. § 1401(d), Al Turi is and was required to make its withdrawal liability even if arbitration were pending. Section 29 U.S.C. § 1401(d) reads:

> Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination. If the employer fails to make timely payment in accordance with such final decision, the employer shall be treated as being delinquent in the making of a contribution required under the plan . . . .

---

[2] The Seventh Circuit's finding in Chicago Truck Drivers was based on its reading of 29 C.F.R. § 4219.31(c)(1), a regulation issued by the Pension Benefit Guaranty Corporation (PBGC) delaying acceleration of a fund's withdrawal liability assessment where the employer has timely filed for arbitration. 29 C.F.R. § 4219.31(c)(1). "The Federal Register publication accompanying the regulation makes clear that this limitation does not apply where the default is based on a substantial likelihood that an employer will be unable to pay." National Pension Plan of the UNITE HERE Workers Pension Fund v. Swan Finishing Co., Inc., 2006 WL 1292780, at * 3 (S.D.N.Y. 2006) (citing 49 Fed.Reg. 22,642, at 22,644 (1984)). Here, however, plaintiffs are seeking an entry of default based on delinquent payments.

29 U.S.C. § 1401(d). However, the second sentence of that section shows that it is a failure to make payments in accordance with a *final* decision of the arbitrator that constitutes delinquency or default. See, e.g., Republic Industries, Inc. v. Teamsters Joint Council, 718 F.2d 628, 642 n. 16 ("The second sentence, however, apparently contemplates that it is the failure to render payments upon that final decision which constitutes default."); see also Debreceni v. Merchants Terminal Corp., 740 F. Supp. 894 (D. Mass. 1989) (rejecting a claim for attorneys' fees under 29 U.S.C. § 1401(d), stating that "the arbitrator has yet to make a final decision in this case"). Thus, I do not find that 29 U.S.C. § 1401(d) creates a bar to staying these proceedings while the parties return to arbitration. In fact, delinquency or default under that that section depends upon a final decision by the arbitrator.

Finally, while the AAA rules do cover extensions of time and adjournments, I find nothing in the record or the AAA rules to definitively show that the arbitration, last adjourned in 2003, was in fact closed by the AAA with prejudice to either party. However, this finding would not preclude the arbitrator from making a determination that defendant waived its arbitration rights under internal AAA rules. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (finding in the arbitration clause context that "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability'") (citing Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983)).

In this case, I am troubled by the failure of the defendant to notify the AAA of the ongoing discussions with plaintiffs and to seek timely adjournments in line with the AAA rules, or to otherwise compel plaintiffs to engage in arbitration anytime between 2004 and 2009. However, I am also troubled by the notion that a Fund can be put on notice of an employer's precarious financial situation, fail to respond to requests for a resolution, wait until the employer

13

is in default, and subsequently seek the full amount of withdrawal liability along with interest, liquidated damages, attorneys' fees and costs.

While there is no ideal outcome to the present motion, I cannot find on the current record that defendant has waived its right to arbitration. Because the federal courts favor a policy of arbitration, and "any doubts concerning whether there has been a waiver are resolved in favor of arbitration," PPG Industries, Inc., 128 F.3d at 107 (citations omitted), defendant's motion to compel arbitration is granted, and the current action is stayed pending the outcome of the arbitration proceedings.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to compel arbitration is granted, and the action is stayed pending the outcome of the arbitration. Plaintiffs' motion for summary judgment is denied without prejudice. The parties are required to consult with each other within the next 30 days regarding the re-initiation of the arbitration process.

SO ORDERED.

                                                        s/ ARR

                                        Allyne R. Ross
                                        United States District Judge

Dated:        September 17, 2010
                Brooklyn, New York

Service List:

*Plaintiffs' Attorney*:
Rachel S. Paster
Cary Kane LLP
1350 Broadway
Suite 815
New York, NY 10018

*Defendant's Attorney*:
Edward F. Beane
Keane & Beane, Esq.
445 Hamilton Avenue
White Plains, NY 10601